UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAN R.,<br><br>           Plaintiff,<br><br>MARTIN J. O'MALLEY,[1]<br>Commissioner of Social Security,<br><br>           Defendant. | Case No. CV 5:23-00637 RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Van R.[2] ("Plaintiff") challenges the Commissioner's denial of a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is **REVERSED**, and the matter **REMANDED**.

## II. BACKGROUND

On September 17, 2019, Plaintiff applied for DIB, alleging disability beginning March 30, 2013. (AR 70-72.) Plaintiff's application was denied on

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley, the Commissioner of Social Security, is hereby substituted as the defendant.

[2] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

September 26, 2019, and upon reconsideration on January 7, 2020. (AR 70, 82.) On February 10, 2020, Plaintiff appealed the Commissioner's decision and requested a hearing before an Administrative Law Judge ("ALJ"). (AR 101-03, 105.) One hearing took place on June 22, 2020, and another on March 10, 2021. (AR 29-52, 53-69.)

### The March 31, 2021, Decision

On March 31, 2021, the ALJ issued his first unfavorable decision. (AR 15-23.) At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity between March 30, 2013, the alleged disability onset date, and December 31, 2017, his date last insured. (AR 17.) At **step two**, the ALJ determined Plaintiff had multiple severe impairments: depressive disorder, post-traumatic stress disorder ("PTSD"), and alcohol dependence. (*Id.*) At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that medically equals the severity of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 18.) Before proceeding to step four, the ALJ assessed that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with some non-exertional limitations: can perform complex but routine tasks with few changes, can have frequent interaction with coworkers and supervisors, and is limited to minimal public contact. (AR 19.) At **step four**, the ALJ concluded Plaintiff could perform past relevant work as an electronics technician. (AR 22.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could perform past relevant work as an electronics technician. (*Id.*)

On May 14, 2021, the Appeals Council denied Plaintiff's request for review. (AR 1-6, 1177.) Plaintiff first filed suit asking this Court to reverse and remand the matter on July 8, 2021. *Van R. v. Saul*, No. 21-01143 (C.D. Cal. closed Nov. 16, 2021). On November 15, 2021, the parties stipulated to a voluntary remand, which the Court granted. *Id.*; (AR 1176). On February 15, 2022 on remand, the ALJ was

directed to evaluate Plaintiff's alleged symptoms, give further consideration to medical source opinions, further consider whether Plaintiff has and is able to perform past relevant work, and, if warranted, obtain supplemental evidence from a vocational expert ("VE") to clarify limitations on Plaintiff's occupational base. (AR 1200-04.)

### The February 17, 2023, Decision

On January 23, 2023, another hearing at which a VE and Plaintiff testified, occurred. (*See* AR 1133-56.) The ALJ rendered his second unfavorable decision on February 17, 2023. (AR 1105-25.)

At **step one**, the ALJ found Plaintiff did not engage in substantial gainful activity between his alleged disability onset date, March 30, 2013, and his date last insured, December 31, 2017. (AR 1110.) At **step two**, the ALJ found Plaintiff had two severe impairments: depression and PTSD. (*Id.*) At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that medically equals the severity of one of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (AR 1111.) With respect to RFC, the ALJ determined Plaintiff can perform a full range of work at all exertional levels with the following non-exertional limitations: can perform simple repetitive tasks and up to detailed tasks; is precluded from complex tasks; cannot perform teamwork; can frequently interact with supervisors and coworkers but cannot have intense personal interactions or perform teamwork; can focus and concentrate for two hours at a time congruent with normal breaks; can tolerate ordinary stress and changes; is precluded from work requiring high-production quotas or frequent changes in the work setting. (AR 1112.) At **step four**, the ALJ determined transferability of job skills from past relevant work was immaterial because Plaintiff is considered "not disabled" regardless. (AR 1117.) At **step five**, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded there were a significant number of jobs in the national economy that Plaintiff could have performed through

the date last insured. (AR 1117-18.)

On April 12, 2023, Plaintiff filed the present suit challenging the Commissioner's decision. (Dkt. No. 1.) The parties filed their respective briefs for the Court's consideration. (*See generally* Dkt. Nos. 11 ("Pl. Brief"), 18 ("Comm'r Brief"), 19 ("Pl. Reply").)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if, when applied against proper legal standards, they are supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is shown "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). "[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "However, the ALJ 'need not discuss *all* evidence presented'" to her, but "must only explain why 'significant probative evidence has been rejected.'" *Hurn v. Berryhill*, No. 17-00884, 2018 WL 4026357, at *3 (W.D. Wash. Aug. 23, 2018) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

"'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

### IV. DISCUSSION

Plaintiff contends the ALJ (1) failed to provide clear and convincing reasons for discounting Plaintiff's subject symptom testimony; (2) failed to properly evaluate the examining medical source opinion of David Vermeersch, Ph.D., a consultative psychologist; (3) failed to properly evaluate the opinion of the testifying medical expert, Michael Lace, Psy.D.; and (4) improperly relied upon VE testimony given in response to an incomplete hypothetical question.

#### a. Claim One—Subjective Testimony

Plaintiff contends the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony about his mental impairments. (Pl. Brief at 2; Pl. Reply at 1-2.) The Commissioner argues the ALJ's reasons for discounting Plaintiff's testimony are sufficiently specific. (Comm'r Brief at 5.)

The Court agrees with the Commissioner.

##### i. Plaintiff's Testimony

Plaintiff testified he last worked in March 2013 as a computer technician. (AR 58-59, 1139.) His job did not require him to do any heavy lifting; it involved sitting, taking calls, and resolving issues. (AR 59.) Up until that point, he had worked in information technology ("IT") for around 10 years. (AR 60-61.) Prior to IT, Plaintiff was a truck driver for about five years. (AR 61, 1139.) Before that, Plaintiff did gig work. (AR 62, 64.) He testified he could not work because of his

deep depression, anxiety, and triggers. (AR 64.) The mental problems started around 2000; the Veterans' Administration diagnosed him, and he began attending both group and one-on-one PTSD, anxiety, and depression courses. (AR 64, 1143-44.) The symptoms seemed to worsen around 2013, and he became homeless. (*Id.*; AR 47.) He has attended treatment offered by the VETS program ever since. (AR 64, 47.)

Plaintiff testified to being in the Marine Corps. from 1989 to 1993, and, after leaving the military, working as a truck driver from 1993 to 1998. (AR 37, 65.) Between 1998 and 2001, Plaintiff worked part-time jobs. (*Id.*) He worked as a computer technician for Sprint between 2000 and 2008, was "the eyes of the control centers," and worked on troubleshooting problems. (AR 38-39; 65-66.) He did not lift more than 20-30 pounds while at Sprint. (*See* AR 39, 41.) In late 2008, Plaintiff worked for Pomeroy Select Advisory Services as an IT contractor. (*Id.*) In 2010, Plaintiff commissioned sales sites for Convergence. In 2012 and 2013, Plaintiff worked for Demco Collaboration Services, or Collab, also in technology. (AR 42.)

Plaintiff does not work because he has nightmares and becomes triggered from things like being tapped on the shoulder. (AR 67.) He attributes his mental impairments to his military service because he did not experience symptoms prior to service, which exposed him to "life altering" situations. (*Id.*) For years, Plaintiff attempted to stay busy and did not receive treatment, but "it just all caught up" to him. (AR 68.)

Plaintiff testified to having trouble standing because of reconstructive knee surgery. (AR 45.) He could stand for about seven minutes before needing to sit or change posture or position. (*Id.*) At some point, he could sit for no more than about 30 minutes before needing to stand up. (AR 46.) Plaintiff testified to having some hearing loss in his right ear. (*Id.*) He has trouble hearing every day and discerning tones, pitches, or directions of sound. (*Id.*) He is nearsighted and has

floaters and black spots in his eye. (*Id.*) He has trouble concentrating because his thoughts drift off. (AR 47; *see* AR 1142.) He "take[s] it day by day." (AR 47.) He attends therapy twice per week. (AR 1143.)

Plaintiff testified his impairments are related to his military service. (AR 1144.) Plaintiff testified that his PTSD has become so severe he has "severe internal nervousness about [him]self" and he has "certain perception issues." (AR 1145.) He was "normal" prior to serving in the military, but now experiences flashbacks from the situations and dead bodies he encountered in the military. (*Id.*) He drinks a couple of alcoholic drinks per week but does not have a dependency on alcohol. (AR 1146.) Plaintiff has two kids, one of which he has a poor relationship with, and the other he is in contact with and assists financially. (AR 1147-48.) He has two sisters, who he speaks to once every two weeks. (AR 1148-49.) He shares an apartment with his partner of several years, Ann, who helps him out a lot, works remotely, and "takes care of everything." (AR 1149-50.) Plaintiff avoids going outside the house, so he does not help out with the shopping. (AR 1150.)

### ii. The ALJ's Analysis

The ALJ discounted Plaintiff's subjective symptom testimony, taking into account his activities of daily living; noncompliance with medication; Plaintiff's friend Jeffrey Hill's Third-Party Function Report from January 2, 2018; and objective medical evidence, which includes Dr. Michael Lace's medical opinion. (AR 1112-16); *see Williams v. Berryhill*, No. 17-03624, 2018 WL 791144, at *4 (C.D. Cal. Feb. 8, 2018) ("Medical opinion evidence is merely an example of objective medical evidence, and thus, does not constitute a separate and distinct reason for rejecting Plaintiff's subjective symptom testimony." (citing *Vigil v. Comm'r of Soc. Sec.*, No. 16-1677, 2017 WL 4075581, at *8 (E.D. Cal. Sept. 14, 2017); *Petit v. Astrue*, No. 11-2001, 2012 WL 3965146, at *7 (C.D. Cal. Sept. 11, 2012))).

The ALJ determined Plaintiff's activities of daily living undermined the alleged severity of his symptoms, noting he has a "robust range of activities of daily

7

living that include[] being able to maintain a healthy lifestyle, walk daily, go to the gym daily, visit a vet center regularly, and take care of his own bills and day-to-day living." (AR 1114 (citing Exhs. 2F, 3F).) The ALJ also noted that Plaintiff reported visiting family in Arkansas, Tennessee, and Mississippi in 2016, and was able to participate in group therapy for PTSD and attended school three days a week (all day) in 2014. (AR 1115.)

The ALJ noted Plaintiff was at times noncompliant with his medication because treatment notes indicated his psychotropic medications helped when he took them, and "he had not filled some medication prescriptions and was only taking Gabapentin 'on and off.'" (AR 1115.) Thus, the ALJ concluded it was reasonable to assume Plaintiff would have responded better to his course of treatment had he been compliant with his medications. (*Id.*)

The ALJ found Jeffrey Hill's Adult Function Report unpersuasive because "the preponderance of the objective evidence does not support the extent of the function loss described in the report and alleged by [Plaintiff.]" (AR 1113.)

The ALJ also determined Dr. Michael Lace's opinion was partially persuasive with respect to the paragraph B criteria because while it reflects the most recent assessment of Plaintiff's functioning, it does not fully support Plaintiff's moderate limitation in interacting with others and only occasional contact with coworkers, supervisors, and the public. (AR 1114.) The ALJ also opined that Dr. Lace's opinion about the complexity of work tasks overestimates Plaintiff's mental RFC, which limits him to no more than detailed tasks. (*Id.*)

The ALJ noted objective medical evidence, such as mental status examinations and other treatment notes, that showed that even though Plaintiff had anxious mood and constricted affect, Plaintiff displayed cooperative and appropriate behavior, normal cognition and insight, and no difficulty making decisions. (AR 1114-15.)

///

### iii. Analysis

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Once satisfied, the ALJ must examine the entire case record, which includes the claimant's own testimony, for evidence on the intensity, persistence, and limiting effects of claimant's symptoms. *Id.* at 1035.

The ALJ must also take care not to pick and choose only that evidence that bolsters his findings. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). If the ALJ discounts the claimant's testimony for lack of credibility, he must provide specific, clear, and convincing reasons for doing so. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

#### 1. Objective Medical Evidence of an Underlying Impairment

For the first step of the analysis, Plaintiff must present objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell*, 947 F.2d at 344).

Here, Plaintiff presented objective medical evidence of an underlying impairment that could reasonably be expected to produce his alleged symptoms because he has depression and PTSD, the cumulative effect of which could reasonably cause detachment, social isolation, poor focus, and hyper-alertness, among other symptoms. (AR 1113.)

9

Finding step one satisfied, the Court proceeds to step two. *Samuel Z. v. Kijakazi*, No. 20-1924, 2022 WL 4842936, at *3 (C.D. Cal. Sept. 30, 2023); *Kimberli M. S. v. Kijakazi*, No. 21-1836, 2023 WL 2346330, at *10 (S.D. Cal. Mar. 3, 2023).

### 2. Examination of Entire Case Record

For the second step of the analysis, the ALJ must examine the entire case record—including the claimant's testimony—for evidence on the intensity, persistence, and limiting effects of the claimant's symptoms. In evaluating the claimant's credibility, a court may consider a multitude of factors, such as inconsistencies between the claimant's statements, objective medical evidence, daily activities, work record, and statements from healthcare providers or third parties about the nature, severity, and effect of the symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). A lack of objective medical evidence substantiating the claimant's statements about symptoms by itself is not grounds for discrediting the claimant's symptom testimony. *Id.*

#### a. Activities of Daily Living

The mere fact a claimant can perform "certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise," does not discredit her claim of disability. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Only when these physical activities consume a substantial part of the claimant's day can they undermine her testimony of alleged symptoms. *Id.* at 1049.

Here, the ALJ properly discounted Plaintiff's subjective symptom testimony on the basis of his daily living activities because the ALJ noted Plaintiff engages in activities of daily living (walking and going to the gym daily, visiting a veterans' center regularly, taking care of his own bills and day-to-day living, and maintaining a healthy lifestyle) that undermine the alleged severity of his symptoms. activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28,

2022). The ALJ reasonably determined Plaintiff's ability to attend school three times per week in 2014 and visit family in different states in 2016 undermined the alleged severity of his depression. (AR 1114-15.) The ALJ reasoned Plaintiff's daily living activities are "an indication of generally intact cognitive, social and adaptive functioning" despite Plaintiff's allegations of symptoms. (AR 1115.) Therefore, Plaintiff's subjective symptom testimony cannot be discounted for inconsistencies with his daily living activities.

### b. Noncompliance with Medication

The failure to follow prescribed treatment, absent good cause, is a valid reason to discount a claimant's subjective symptom testimony. *Orn*, 495 F.3d at 638; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Peters v. Colvin*, No. 13-8907, 2015 WL 349421, at *5 (C.D. Cal. Jan. 23, 2015) (citing 20 CFR § 416.930(a)).

Here, the ALJ's analysis of Plaintiff's noncompliance with medication is insufficient to discount his testimony because the ALJ merely notes that Plaintiff was not always compliant with his medications without connecting the noncompliance to the symptom testimony it purports to discount. *See Morgan*, 169 F.3d at 599. The Commissioner's argument that the ALJ's analysis is rational and should therefore stand, necessarily requires the ALJ to have written an analysis connecting Plaintiff's medication noncompliance to statements he made about his symptoms. (*See* Comm'r Brief at 9-10); *Guthrie*, 2022 WL 15761380, at *1. The ALJ did not do so here. Therefore, Plaintiff's subjective symptom testimony cannot be discounted on the basis of noncompliance with medication. *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014).

[Commented [RO1]: Let's include a citation to Garrison v. Colvin, 759 F.3d 995 n.24 to shore this part of the analysis]

### c. Jeffrey Hill's Adult Function Report

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*,

11

236 F.3d 503, 511 (9th Cir. 2001). A lack of support from overall medical evidence is an improper basis to disregard lay testimony because "[t]he fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

Here, the ALJ's analysis of Mr. Hill's Adult Function Report is insufficient to discount Plaintiff's testimony because the ALJ cited a lack of medical evidence as the sole reason for discounting Plaintiff's testimony. (AR 1113); *see Kelli C. v. Berryhill*, No. 18-02237, 2019 WL 1330890, at *6 (C.D. Cal. Mar. 25, 2019) (citing *Smolen v. Chater*, 80 F.3d 1273, 1289; *Bray v. Berryhill*, No. 17-1385, 2018 WL 3076919, at *9 (C.D. Cal. June 19, 2018); *Stewart v. Astrue*, No. 11-852, 2012 WL 487467, at *6 (C.D. Cal. Feb. 15, 2012) ("A lack of support from the 'clinical or diagnostic medical evidence' is not a proper basis for disregarding lay witness' observations." (quoting *Diedrich*, 874 F.3d at 640)). Therefore, Plaintiff's subjective symptom testimony cannot be rejected on the basis of Mr. Hill's Adult Function Report.

d. Objective Medical Evidence

A lack of objective medical reason is a valid reason to discount a claimant's subjective symptom testimony as long as it is not the only reason. *See Bunnell*, 947 F.2d at 345; *Venegas v. Astrue*, No. 08-8636, 2009 WL 4267439, at *4 (C.D. Cal. Nov. 24, 2009).

Here, the ALJ properly discounted Plaintiff's subjective symptom testimony for lack of objective medical evidence, relying on normal mental status examinations with some reported anxiety and PTSD symptoms and the rare occasion Plaintiff presented outside his normal limits. (AR 1114, citing Exhs. 2F, 3F; *see* Comm'r Brief at 5-6.) The ALJ also noted that although Dr. Lace found a report stating Plaintiff was unable to work, he found that report was unsupported. (*Id.*) The ALJ explained that although Plaintiff showed anxious and constricted mood and affect,

12

recurring thoughts and nightmares of trauma, avoidance behaviors, and hyperarousal, Plaintiff still retained the ability to not be distracted, and he was cooperative with appropriate behavior. (*Id.*) The ALJ further pointed out Plaintiff demonstrated normal cognition and insight in his examinations. (*See generally* AR 1114-16.)

Plaintiff's argument the Commissioner erred by not discussing other medical evidence of Plaintiff's mental impairments, (Pl. Brief at 14), is unpersuasive because an ALJ need not discuss every shred of evidence presented to him. *Christopher R. M. v. Kijakazi*, No. 22-7555, 2023 WL 4562825, at *4 (C.D. Cal. July 17, 2023); *Ackley v. Astrue*, No. 08-1880, 2009 WL 1705781, at *2 (C.D. Cal. June 10, 2009) (citing *Vincent*, 739 F.2d at 1394-95). As long as the ALJ's conclusion is supported by substantial evidence, as is here, it must be upheld. (Comm'r Brief at 9 (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."))); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Because the ALJ properly discounted Plaintiff's subjective symptom testimony for his activities of daily living, the ALJ did not err in relying on a lack of objective medical evidence to discount Plaintiff's testimony. *See Bunnell*, 947 F.2d at 345. The ALJ therefore did not err.

### b. Claims Two and Three—Medical Source Opinions

An ALJ cannot reject an examining or treating physician's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (citing *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)). The ALJ considers several factors in weighing a treating physician's opinions and must explain specifically how it considered the supportability and consistency factors. *Id.* at 739-40. "Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence, while consistency concerns how 'a medical opinion is consistent with the evidence from other medical and nonmedical sources.'" *Id.* (quoting

13

*Woods*, 32 F.4th at 791-92). An ALJ "need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

### i. David Vermeersch, Ph.D

Plaintiff claims the ALJ improperly discounted Dr. Vermeersch's opinion as conclusory and unsupported. (Pl. Brief at 13-17.) The Commissioner claims the ALJ's analysis of Dr. Vermeersch's opinion was proper. (Comm'r Brief at 10-12.)

The Court agrees with Plaintiff.

#### 1. Dr. Vermeersch's Testimony

Dr. Vermeersch noted Plaintiff has PTSD and major depressive order. (AR 570.) Plaintiff has significant problems in his relationships and experiences depressed mood, anxiety, suspiciousness, weekly panic attacks, chronic sleep impairment, mild memory loss, flattened affect, impaired judgment, disturbances of motivation and mood, difficulty in adapting to stressful circumstances, obsessional rituals, and impaired impulse control. (*Id.*; AR 574.) Dr. Vermeersch opined Plaintiff has severe obstructive sleep apnea that requires medication to manage. (AR 576.) Plaintiff uses a continuous positive airway pressure machine to help him sleep and exhibits symptoms attributable to sleep apnea. (AR 577.) His sleep apnea does not impact his ability to work, and he is morbidly obese. (AR 578.)

#### 2. The ALJ's Analysis

The ALJ found Dr. Vermeersch's opinions unpersuasive because they were "conclusory and not accompanied by an explanation as to how the objective evidence supports his assertions." (AR 1116.) Further, Dr. Vermeersch's opinion was "not a function-by-function assessment" of Plaintiff's RFC. (AR 1116-17.)

#### 3. Analysis

The ALJ's analysis of Dr. Vermeersch's opinion is improper because it is conclusory. (AR 1116-17.) *See Ann M. v. Kijakazi*, No. 23-1081, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024). The ALJ very broadly summarizes Dr.

14

Vermeersch's findings, and then states his conclusions that: the evidence conveys Plaintiff experienced some limitations; Dr. Vermeersch's statements are conclusory and unaccompanied by an explanation; and Dr. Vermeersch's opinion is not a function-by-function assessment of Plaintiff's RFC. *See Sandra B. v. Kijakazi*, No. 20-11359, 2022 WL 2651981, at *6 (C.D. Cal. July 8, 2022).

Commissioner's arguments are unpersuasive because, as Plaintiff states, a medical opinion cannot be disregarded for "not . . . using Social Security terminology." (Pl. Brief at 11.)  The ALJ's additional reasons do not save the analysis because he did not explain what about or how Dr. Vermeersch's opinion was conclusory or unsupported.  Although the ALJ did analyze the consistency factor—contrary to Plaintiff's assertion he did not—when he "concur[red] that the evidence conveys [Plaintiff] had severe mental impairments that pose some limitation with respect" to certain areas of functioning, his analysis is insufficient for the same reasons as is the supportability analysis.  (AR 1116).  *Sandra B.*, 2022 WL 2651981, at *6; *see Ann M.*, 2024 WL 39193, at *2 ("[I]t is sometimes possible to ascertain which factor the ALJ analyzed by looking at the context of the ALJ's reasoning and whether the ALJ compared the opinion to the medical source's own treatment notes . . . or other evidence in the record.").

### ii. Michael Lace, Psy.D

Plaintiff claims the ALJ failed to properly evaluate the supportability and consistency factors and did not provide a proper explanation for rejecting Dr. Lace's assessment of Plaintiff's social work restrictions. (Pl. Brief at 19.)  The Commissioner argues that even if Plaintiff's interpretation of the evidence of record is different from that of the ALJ's, that interpretation is insufficient to rebut the ALJ's opinion because the ALJ's opinion is rational and reasonable.  (Comm'r Brief at 14.)

The Court agrees with Plaintiff.

///

### 1. Dr. Lace's Testimony

At the March 10, 2021 hearing, Dr. Lace testified Plaintiff suffered from recurrent major depressive disorder and PTSD. He testified Plaintiff has a "significant history of alcohol dependence," and exhibits moderate limitations; Plaintiff's mental status examinations are "quite uniformly within normal limits," although he exhibits symptoms of anxiety and PTSD; and Plaintiff rarely presents outside of normal limits. (AR 33.) Dr. Lace opined that a 2014 report asserting—without any meaningful support—Plaintiff was unable to work, was a bit of an outlier. (AR 34.) Dr. Lace also opined that Plaintiff's mental RFC up to December 31, 2017, included limitations to occasional contact with coworkers, the public, and supervisors; no fast-paced production line work; limitation to routine tasks, meaning there would be few changes in the nature of tasks throughout the day. (AR 34-35.)

### 2. The ALJ's Analysis

The ALJ found Dr. Lace's testimony with respect to paragraph B criteria partially persuasive. (AR 1114.) The ALJ found the evidence does not fully support Dr. Lace's opinion that Plaintiff possesses a moderate limitation in interacting with others and having only occasional contact with coworkers, supervisors, and the public, and that Dr. Lace overestimated the complexity of work tasks allowed by Plaintiff's RFC. (*Id.*)

### 3. Analysis

Here, the ALJ failed to properly evaluate the supportability of Dr. Lace's assessment because the ALJ's analysis is conclusory. At the end of the ALJ's detailed summary of Dr. Lace's testimony (AR 1113-14), the ALJ merely states his conclusion: that "the evidence does not fully support [Dr. Lace's] opinion that [Plaintiff] had moderate limitation in the area of interacting with others and could only have occasional contact with coworkers, supervisors[,] and the public. . . [and Plaintiff] should be limited to no more than detailed tasks, as Dr. Lace's opinion

regarding the complexity of the work tasks is an overestimate of [Plaintiff's] mental [RFC]." (AR 1114). *Cf. Rosalio O. v. Kijakazi*, No. 22-8679, 2023 WL 5180325 (C.D. Cal. Aug. 11, 2023) (providing an adequate rationale for finding a healthcare provider's opinion minimally persuasive).

The Commissioner's arguments are unpersuasive because while it is true that ALJ's are not required to perform "a line-by-line exegesis of the claimant's testimony, nor . . . to draft dissertations when denying benefits," *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020), the ALJ must still "provide *some* reasoning" for the Court to review. *Treichler*, 775 F.3d at 1103 (emphasis added). The ALJ did not do so here and instead produced a mere summary of Dr. Lace's opinion.

### c. Claim Four—Incomplete Hypothetical

Plaintiff argues the ALJ improperly relied upon VE testimony that was based on an incomplete hypothetical. (Pl. Brief at 19-21; Pl. Reply at 3-4.) Specifically, the ALJ's second hypothetical question did not encompass the mental work restrictions set forth in the first hypothetical question, thereby making the second hypothetical question "a new scenario limiting a person to a set of new work restrictions: light work and simple, repetitive tasks." (Pl. Brief at 20.) The Commissioner contends the ALJ's step-five finding is supported by substantial evidence. (Comm'r Brief at 14-17.)

The Court agrees with the Commissioner.

#### i. Applicable Law

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, [a vocational expert's] testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Kitchen*, 82 F.4th at 742 (internal quotation marks omitted) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)). The ALJ need only present those limitations he deems to be credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). He must then craft an RFC that reflects the

limitations determined by clinical findings. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

### ii. Analysis

Here, the hypothetical was not incomplete because the ALJ explicitly stated the second hypothetical assumed "the same residual functional capacities in hypothetical #1" in addition to other limitations, and the limitations in hypothetical #1 included no teamwork, frequent interaction with coworkers and supervisors, no intense personal interactions, only ordinary stress, no more than frequent changes in the work setting, and no high production quota work. (AR 1152-54); *cf. Fradiue v. Astrue*, No. 07-4533, 2008 WL 2397505, at *4 (C.D. Cal. June 6, 2008) (finding the ALJ excluded limitations in posing a third hypothetical when, the ALJ said to "forget[] the first two hypotheticals").

The ALJ did not err in relying upon the VE testimony.

### V. REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS

The Court finds that remand for further administrative proceedings is appropriate, as further administrative review could remedy the ALJ's errors. *See Brown-Hunter*, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). On remand, the ALJ shall reassess the medical opinions of Drs. Lace and Vermeersch. The ALJ shall then reassess Plaintiff's RFC and proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing. This order does not preclude the ALJ from considering, on remand, any other arguments raised by Plaintiff.

///
///
///
///
///
///

## VI. CONCLUSION

IT IS ORDERED that Judgment shall be entered **REVERSING** and **REMANDING** the decision of the Commissioner denying his period of disability and application for DIB.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 29, 2024

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**
**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**